**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

SEENA WALKER                                                                                                  PLAINTIFF

v.                                         CASE NO. 5:07CV0101 JLH

UNION PACIFIC RAILROAD COMPANY                                                          DEFENDANT

**OPINION AND ORDER**

Seena Walker commenced this action against Union Pacific Railroad Company, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. Walker alleges that certain conduct of her supervisor, Larry Hatley, amounted to racial and sexual harassment and created a hostile work environment. Union Pacific filed a motion for summary judgment, arguing that Walker's claims are barred by the applicable statute of limitations and that she failed to make out a prima facie case that she was subjected to a hostile work environment based on race or sex. For the following reasons, Union Pacific's motion for summary judgment is granted.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The following material facts are not in dispute. Walker, who is Caucasian, has worked for Union Pacific since 1977. In 1998 she transferred to the Pine Bluff Yard and eventually bid to the

position of Chief Clerk for the Second Shift. Her duties consisted of preparing required paperwork for train crews, inputting on the computer the status of trains and crews, and coordinating drives to pick up and drop off the crews. She regularly interacted with other managers and employees, including the Manager of Train Operations (MTO), Manager of Yard Operations (MYO), yardmasters, and planners. The MTOs and MYOs were her supervisors. Larry Hatley, an African-American, transferred to the Pine Bluff Yard in 2001 and was one of three MYOs during the majority of Walker's tenure with Union Pacific. The other two MYOs and the MTOs during the majority of her tenure were Caucasian.

Walker did not experience any problems with Hatley for the first four or five months of their working relationship. After several months, Walker's co-worker David Hill informed her that, based on his observations of Hatley's treatment of other employees, he perceived that Hatley treated her differently. Walker has admitted that she did not think much of Hatley's treatment of her at that time. Walker alleges that Hatley's improper treatment of her continued and escalated from that time. Walker alleges that Hatley would talk to her in an angry voice and in a hateful tone.

In or around November 2003, an incident occurred between Walker and Hatley. After Walker had informed Hatley that the crews could not be assigned as he had requested, Hatley eventually realized that the crews could not be reassigned as planned and told Walker to disregard his instructions. Hatley told Walker, "Well, I tried to tell you that." Walker says that Hatley then grabbed her clipboard and then threw and bounced it off of her desk. Donna Taylor, another clerk, witnessed this incident.

Walker further says that Hatley continually bullied and mistreated her from 2001 until June 2006. She says that Hatley called her more times than was professionally necessary or acceptable.

She also says that on repeated occasions Hatley would treat her and the other Caucasian employees differently than the African-American employees. For example, on one occasion Hatley acknowledged and shook hands with all of the African-American employees while intentionally ignoring the presence of the Caucasian employees, an incident also witnessed by John Nelson, a Union Pacific conductor. Donna Taylor, the clerk who witnessed the clipboard incident in November 2003, has also stated that she believed Hatley had singled out Walker and treated her differently.

The next significant incident between Walker and Hatley occurred in April 2005. Hatley had called Walker about a crew's status. Walker says that she communicated with a driver on the radio, assuming that Hatley would also hear the radio communication. Hatley then entered the Ready Room and asked Hatley why she did not directly inform him that the crew was leaving. Walker informed Hatley of her radio communication, and Hatley responded that his radio sometimes did not work. Walker says that Hatley then yelled at her for not calling him directly, looked at her with a great amount of anger in his eyes, screamed repeatedly in a hostile fashion, and then picked up and slammed down the end of a working table in the Ready Room. This incident was also witnessed by David Hill, a Union Pacific clerk, who stated that he could not believe Hatley's reaction and observed that Walker was upset by the incident.

After that incident, Walker called Union Pacific's EEO Hotline and was informed that her complaint was not EEO related. She then sent a complaint letter dated May 13, 2005, to the director of Union Pacific's EEO Department. Mike Campbell, the Pine Bluff Director of Terminal Operations, investigated Walker's complaint. Hatley was present in the initial investigatory meeting with Walker. Walker believes that Campbell did not take seriously her complaints or the

investigation of Hatley's conduct. Walker says that Campbell informed her that she would have to continue working for Hatley. As a result of Campbell's investigation, Hatley was ordered to complete an anger management program, and Walker received notice of Hatley's completion of the program in a letter dated September 20, 2005.

Walker says that between the fall of 2005 and June 2006 she informed Campbell several times that Hatley was continuing to harass her and speak with her in an angry tone but Campbell never called the Union Pacific EEO Hotline to report those complaints. On June 22, 2006, Walker took an extended medical leave of absence for hand and elbow surgery and thereafter refused to return to work. She was also treated by Dr. Shea, an otolaryngologist, for damage to her left ear due to Meniere's attacks. Dr. Shea has testified that Walker's working conditions likely contributed to those attacks. She was also treated by Dr. Levitch, a psychiatrist, who has stated that Walker suffers from Post-Traumatic Stress Disorder brought about by Hatley's treatment of her. On November 11, 2006, Walker filed a charge with the EEOC, and she claims she waited until November 2006 to file the charge because Union Pacific began to inquire about her return to work.

In its motion for summary judgment, Union Pacific argues that Walker's claims are barred by the statute of limitations. Because Walker filed her EEOC charge on November 11, 2006, the 180-day limitations period began on May 24, 2006. Conduct occurring outside of the limitations period cannot be grounds for a suit unless it is part of a systematic or serial continuing violation. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). The plaintiff must show a sufficient nexus between the incident within the limitations period and the incidents occurring prior to the start of the limitations period. *Id.* Therefore, Walker must first present facts occurring after May 24, 2006, sufficient to support a claim for hostile work environment.

A hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194 (8th Cir. 2006) (quoting *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000)). To show a prima facie case, a plaintiff must demonstrate four elements: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and her protected group status; and (4) the harassment affected a term, condition, or privilege of employment. *Id.* at 1194-95. The plaintiff's employer is then vicariously liable for harassment by supervisory personnel unless the employer can show that (1) it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) the plaintiff failed to take advantage of the employer's preventive or corrective opportunities. *Id.* at 1195.

The incidents involving the clipboard and working table occurred well outside of the limitations period and are relevant only if Walker first establishes that all four elements for a hostile work environment were present within the limitations period. Walker alleges generally that Hatley harassed her from 2001 through the end of her employment in 2006. Walker has alleged that Hatley treated her and other Caucasians differently throughout her employment, continuously singled her out, spoke to her in an angry tone, and harassed her by an inordinate number of telephone calls. However, Walker has failed to present evidence of specific instances of mistreatment by Hatley after May 24, 2006, that meet the threshold of objectively severe or pervasive discriminatory conduct. Her allegations relating to misconduct occurring after May 24, 2006, are conclusory in nature. Even if Walker's conclusory allegations were sufficient to show that she was subject to unwelcome

harassment, she has presented no facts to show a causal connection between that harassment and her protected status as a Caucasian female. If she could allege specific instances of misconduct that demonstrated all four elements of a hostile work environment within the limitations period, then the clipboard and working table incidents might be relevant as evidence of a systematic or continuing serial violation. *See Klein v. McGowan*, 198 F.3d at 709. However, because Walker has failed to establish a prima facie case of hostile work environment within the limitations period, conduct occurring prior to the start of that period cannot be considered in determining whether the four elements of a hostile work environment have been met.

Walker has failed to present evidence that she was subjected to a hostile work environment within the limitations period. Therefore, Union Pacific's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 29th day of October, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE